# EXHIBIT A

OLNACS #

# Direct Installment Loan Disclosure and Note

**Borrower:** MARK J KOSEK
CAROL L KOSEK

**Lender:** PNC Bank, National Association

**◉ PNCBANK**

**Date:** 07/25/2005

Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

## Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of the Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost the Borrower. | Amount Financed The amount of credit provided to the Borrower or on the Borrower's behalf. | Total of Payments The amount the Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| **6.490 %** | **$ 150,061.20** | **$ 190,194.00** | **$ 340,255.20** |

The Borrower's Payment Schedule will be:  e means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 1,417.73 | Monthly, beginning 09/01/2005 |
| | | |
| | | |

**Security:** Lender is getting a security interest in deposits or property held by Lender, and:
☐ None. ☐ Goods or property being purchased.
☒ Real Estate. ☐

In addition, collateral (other than Borrower's principal residence) securing other obligations to Lender may also secure this Note.
**Security Interest Charges:**
☐ None ☒ Filing Fees $ 95.00

**Variable Rate:** ☐ Not Applicable.
☒ This loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.
☐ The Annual Percentage Rate may increase if the Prime Rate published in *The Wall Street Journal* increases. The rate will not increase more often than once a month. The rate will not increase more than one percentage point in any one month and will not increase more than five percentage points during the term of the loan. The rate will never increase beyond 18%. Any increase in the rate as a result of an increase in the index may cause the number of payments to increase, and/or:
  ☐ the amount of the final payment to change. The final payment will never be increased to more than 150% of the regular payment. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the rate increased to 14 1/2% after 12 payments, increased to 15 1/2% after the next 12 payments, and then remained the same for the term of the loan, you would be required to pay one additional payment of $254.88.
  ☐ the amount of the payments to change. The amount of the payments may increase every four years. The final payment will never be increased to more than 150% of the regular payment. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 72 monthly payments of $203.39, and the rate increased to 14 1/2% after 12 payments, increased to 15 1/2% after the next 12 payments, and then remained the same for the term of the loan, the payment amount would increase to $227.12 for the 49th through the 72nd payments.
  ☐ if Borrower's participation in the automatic payment plan is discontinued for any reason, the Automatic Payment Plan Discount of percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Discount terminated after 12 payments, the payment amount would increase to $ for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)
  ☐ if Borrower's participation in the Club or Package Plan is discontinued for any reason, the Club Discount of percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial interest rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Club Discount terminated after 12 payments, the payment amount would increase to $ for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Late Charge:** ☐ Not Applicable. ☒ If a payment is not paid in full within 15 days of its due date, Borrower may be charged the greater of $20.00 or 5% of the total payment.
**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty.
**Required Deposit Balance:** ☒ Not Applicable. ☐ The Annual Percentage Rate does not take into account any required deposit balance.
**Assumption:** If this loan is secured by a dwelling, someone purchasing that dwelling cannot assume the remainder of the loan on the original terms.

### Itemization of Amount Financed

| Amount Financed |  |
|---|---|
| $ See Settlement Statement | |
| (1) Amount given directly to Borrower | |
| $ See Settlement Statement | |
| (2) Amount paid on Borrower's account | |
| $ See Settlement Statement | |
| (3) Amount retained by Lender for | |
| $ See Settlement Statement | |
| (4) Amount paid to others on Borrower's behalf: | |
| (a) to public officials | |
| $ See Settlement Statement | |
| (b) for credit insurance | |
| $ | |
| (c) to See Settlement Statement | |
| $ | |
| (d) to | |
| $ | |
| (e) to | |
| $ | |
| (f) to | |
| $ | |
| (g) to | |
| $ | |
| (h) to | |
| $ | |
| (i) to | |
| $ | |
| Prepaid Finance Charge | |
| $ See Settlement Statement | |
| Itemization of Amounts paid by Borrower at the time the loan is made: | |
| (1) | |
| $ See Settlement Statement | |
| (2) | |
| $ | |
| (3) | |
| $ | |

**Credit Insurance Is Not Required. Borrower May Cancel Credit Insurance at Any Time Without Penalty.** Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless Borrower signs below and agrees to pay the additional cost(s). Insurance may be purchased on the life of one or two Borrowers. Credit Disability Insurance may be purchased on only one Borrower. If obtained through Lender the cost of the insurance for the original term of the credit is stated below. Lender may receive financial benefits from the Borrower's purchase of insurance. "Borrower" who is insured may not be a Co-Maker.

I want Single Credit Life Insurance which costs $ _____

I want Single Credit Disability Insurance which costs $ _____

We want Joint Credit Life Insurance which costs $ _____

Borrower does not desire or is not eligible for credit insurance: **X** _Mark J Kosek_

Signature of Person to be insured for Single Credit Life Insurance _____

Signature of Person to be insured for Single Credit Disability Insurance _____

Signatures of Persons to be insured for Joint Credit Life Insurance
1. _____ 2. _____

Signature of Borrower _____ _Carol L Kosek_

Notice to Borrower(s): The maximum amount of coverage which insured Borrower(s) will receive is set forth in the certificate or policy, as applicable.

**Direct Loan Note Index.** The index is for convenience and reference. It shall not limit the meaning or scope of any paragraph or section. The numbers refer to the paragraph numbers of the Note.

| | | | |
|---|---|---|---|
| Acceleration of the outstanding balance | 14 | Daily balance | 4,8 |
| Application of payments | 9 | Daily interest rate | 4,8 |
| Assignment | 24 | Default | 14 |
| Attorneys' fees | 2,22 | Definitions | 1 |
| Automatic payment plan | | Delay in enforcement | 16 |
| Borrower's responsibilities | 2,14,25,27,31 | Deposit | 23 |
| Changes in interest rate | 4,5,6,7,13 | Disputed debts | 29 |
| Closing costs | 2 | Early payment | 19 |
| Club or Package Plan | 6 | Finance charges | 4,8 |
| Collateral | 18,20,23 | Flood insurance | 20 |
| Collection expenses | 2,22 | Governing law | 28 |
| Communication concerning disputed debts | 29 | Heirs bound | 27 |
| Computing interest | 8 | Index | 4 |
| Court costs | 2,22 | Insurance | 20,21 |
| Credit Insurance | 26 | Insurance checks | 21 |
| | | Interest after maturity and judgment | 13 |
| | | Interest rate | 2,4,5,6,7,8,13 |
| | | Late charges | 2,22 |
| | | Legal fees | 2,22 |
| | | Lender | 1 |
| Margin | 4 |
| Monthly payment | 3,7 |
| Monthly payment changes | 7 |
| Multiple parties | 25 |
| Paid in full checks | 29 |
| Payment application | 9 |
| Payment Due Date | 3 |
| Payment Schedule | 3,7 |
| Personal representatives bound | 27 |
| Prepayment | 19 |
| Promise to pay | 2 |
| Property insurance | 20 |
| Release of borrowers | 17 |
| Release of security | 17 |
| Remedies | 14 |
| Return Check Charge | 11 |
| Security interest | 18,20,23 |
| Security interest charges | 18 |
| Security interest in deposits | 23 |
| Variable rate | 4,5,6 |

EFORM108655 - 0205

# Direct Installment Loan Disclosure and Note

**Borrower:** MARK J KOSEK
CAROL L KOSEK

**Lender:** PNC Bank, National Association

**Date:** 07/25/2005

## Direct Installment Loan Note

**1. Definitions.** In this Note, the word "Borrower" means each and all of those who sign this Note and each and all of those who endorse the check which disburses the "Amount given directly to Borrower."
The word "Lender" means PNC Bank, National Association
or any person to whom this Note has been transferred.

**2. Borrower's Promise to Pay.** To repay this loan, Borrower promises to pay to Lender $ 190,194.00 , with interest on the unpaid balance from the date funds are advanced until paid in full. Interest shall be paid at the rate per annum of 6.490 %. Borrower promises to make payments in accordance with the payment schedule stated in this Note. Borrower promises to pay to Lender all other amounts which may become due under the terms of this Note, including, if applicable, Credit Insurance Premiums, Late Charges and Costs of Collection. Borrower agrees to make payments at the place designated by Lender. Borrower may also be required to pay to Lender certain other charges before Lender will give any money to Borrower. These charges, if any, are stated on page one in "Itemization of Amounts paid by Borrower at the time the loan is made" and/or in the Settlement Statement.

**3. Payment Schedule.** Borrower agrees to pay to Lender the amounts due under this Note:
[X] in uninterrupted monthly payments: 239 payments of $ 1,417.73 and a final payment, will be billed by Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on 09/01/2005
Payments will continue until all amounts due are paid.
[ ] in uninterrupted monthly payments, except for the months shown:
payments of $ and a final payment, which will be billed by the Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on , PROVIDED, HOWEVER, that no payments shall be due during the months of or
each year.
[ ] in a single payment of $ plus accrued interest and all other amounts due on
[ ] In addition, prior to the month of the first scheduled payment as stated above, interest shall be payable monthly on the unpaid balance and shall be due on the same day of the month as the later payments.
The date that the final payment is scheduled in this paragraph to be due is called the "Maturity Date" of this Note. If Borrower elects to purchase Credit Insurance and then elects to cancel the Credit Insurance, the Payment Schedule may change as described in the "Credit Insurance" paragraph.

**4. Variable Rate.** [X] Not Applicable. [ ] The interest rate on this Note can change based on changes in the Interest Rate Index ("Index"). The rate will be based on the Margin, the Index, and applicable discounts, if any. The Index may change from time to time; the Margin will remain the same for the term of the Note. The interest rate stated in the "Borrower's Promise to Pay" is the "Base Rate." The Base Rate was computed by adding the Margin to the original Index, and then subtracting the Automatic Payment Plan Discount and/or the Club Discount, if applicable. Interest rate adjustments are computed by adding the Margin to the current Index at the time of the adjustment (subject to the limitations described below), and then subtracting the Automatic Payment Plan Discount and/or the Club Discount, if applicable. The interest rate on this loan may be adjusted monthly, on the first calendar day of each calendar month, beginning in the month after the funds are advanced. The Margin is percentage points. The Index is the highest prime rate published in the "Money Rates" section of *The Wall Street Journal* ("Prime Rate") on the last day on which the Prime Rate is published in the preceding calendar month. The Index is not necessarily the lowest rate charged by Lender on loans. If the Index shall cease to be available, Lender shall select a new index, which, in Lender's sole opinion upon a reasonable basis, is comparable to the Index. The annual interest rate will not increase or decrease more than one percentage point in any calendar month, and will not increase or decrease more than five percentage points during the term of the loan, due to changes in the Index. (A change caused by a termination of the Automatic Payment Plan Discount or the Club Discount is not subject to the limitations set forth in the previous sentence.) The annual interest rate will not exceed 18%.

**5. Automatic Payment Plan.** [ ] Not Applicable. [X] Borrower authorizes Lender to deduct the payments on this loan from Borrower's deposit account number on each scheduled payment due date. The interest rate on this loan may increase by 0.260 percentage points ("Automatic Payment Plan Discount") if participation in the automatic payment plan is discontinued for any reason, including: (a) if any Borrower chooses to terminate participation, (b) the deposit account identified above is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on three payment dates.

**6. Club or Package Plan.** [ ] Not Applicable. [X] Borrower is participating in the package of banking services known as, or is a qualified member of a club group known as: PREMIUM . The interest rate on this Note may increase by 0.250 percentage points ("Club Discount"), if participation in this Package Plan or Club Group is discontinued for any reason.

**7. Monthly Payment Changes.**
[ ] The payment amounts will not change over the term of the loan except as stated in the "Payment Schedule."
[X] The payment amounts may increase (but will not decrease) if Borrower terminates participation in the [X] Club or Package Plan [X] Automatic Payment Plan. Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment charge date, at the new interest rate. If the payment amount will increase, Lender will notify Borrower of the effective date and amount of the new payment.
[ ] Changes in the interest rate may cause the number of payments to change and/or the amount of the final payment to change. One month before the Maturity Date, if necessary, the number of payments due will increase so that the final payment will not be more than 150% of the previously scheduled monthly payment.
[ ] Changes in the interest rate may cause the number of payments to change and/or the amount of the payments to change; the first change in the payment amount may occur on a rate 48 months after the due date of the first monthly payment; subsequent changes, if applicable, will occur every 48 months thereafter. Not more than 45 days, but not less than

25 days. before the date of each payment change, Lender will calculate the new payment amount. The payment amount may increase but will not decrease, except for the final payment. Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the interest rate in effect at the time the calculation is being made. One month before the Maturity Date, if necessary, the number of payments due will increase so that the final payment will not be more than 150% of the previously scheduled monthly payment.

**8. Computing Interest.** Interest is charged on a daily basis, according to the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the annual interest rate in effect on that day divided by the number of days in that calendar year. Borrower agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge); early payments will result in less interest being charged. If the interest rate on this Note will not change because of changes in the Index (see the "Variable Rate" section), early and/or late payments will cause the amount of the final payment to change. If the interest rate on this Note can change because of changes in the Index (see the "Variable Rate" section), early and/or late payments will cause the number of payments due, the amount of the payments (if the amount of the payments is subject to change every 48 months) and/or the amount of the final payment to change.

**9. Application of Payments.** Lender will apply payments in the following order of priority: credit insurance premiums, if any, interest, late charges, fees, and then principal. All regular payments will be applied to the satisfaction of scheduled payments in the order in which they become due.

**10. Late Charge.** [ ] Not Applicable. [X] Borrower agrees that Lender may assess a late charge for any payment not paid in full within 15 days of its due date. The late charge will be the greater of $20.00 or 6% of the total amount of the payment which was not paid in full. No late charge will be due, however, if the reason that the payment is late is either: (a) attributable to a late charge assessed on a prior payment; or (b) because, after default by Borrower, the entire outstanding balance on this Note is due. No more than one late charge will be imposed for any single scheduled payment.

**11. Return Check Fee.** Borrower agrees that Lender may assess a fee of $20.00 if Borrower makes a payment with a check that is returned by the drawee for "not sufficient funds" in the account on which the check is written.

**12. Waiver by Lender.** If Borrower has made or makes in the future another loan agreement with Lender, Lender might obtain a security interest in the principal dwelling of Borrower or someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of Borrower with Lender. Lender waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Note. Note unless the security interest is specifically given to secure this Note.

**13. Interest After Maturity and Judgment.** Unless prohibited by applicable law, interest at the rate provided in this Note shall continue to accrue on the unpaid balance until paid in full, even after (whether by acceleration or otherwise) maturity, and/or if Borrower becomes a debtor in an action filed under the Bankruptcy Code and/or if judgment is entered against Borrower for the amounts due. If at any time interest as provided for in this paragraph is not permitted by law, interest shall, in that event and at that time, accrue at the highest rate allowed by applicable law. If the interest rate on this Note can change, the interest rate which will apply beginning on the date a lawsuit is filed by Lender shall be the interest rate in effect on that date or the interest rate stated in the "Borrower's Promise to Pay." whichever is less.

**14. Default.** (As used in this paragraph, the term "Borrower" includes Borrowers, Co-Makers, Guarantors, sureties, and any owner of property which is security for this Note.) Borrower will be in default:
(a) if Borrower does not make any payment before or on the date it is due; or
(b) if Borrower fails to keep any promise made in this Note or defaults in any other note, loan or agreement with Lender; or
(c) if anyone who signs the security agreement or a mortgage securing this Note breaks any promise made in the security agreement or mortgage; including but not limited to the promise not to sell, give away or transfer title to the property which is the subject of the mortgage or security interest; or
(d) if any property in which Lender has obtained a security interest to secure this Note is lost, stolen (and not recovered within a reasonable time) or destroyed; or
(e) if Borrower has made any untrue statement or misrepresentation in the credit application or any other certificate or document given or made for this loan; or
(f) upon the death of Borrower or any one of them, if there is more than one; or
(g) if Borrower provides Lender with false information or forged signatures at any time; or
(h) if a court with proper jurisdiction to do so finds that Borrower, or any one of them, is incapacitated or incompetent; or
(i) if Lender in good faith believes that the prospect of Borrower's paying this Note is impaired.

If Borrower is in default, the entire outstanding balance on this Note shall be immediately due, at the option of the Lender. This will happen without any prior notice to Borrower, or right to cure, except as may be required by law.

Borrower will also be in default:
(j) if Borrower becomes insolvent and/or cannot pay Borrower's debts as they become due; or
(k) if any other creditor tries by legal process to take any money or property of Borrower in the Lender's possession; or
(l) if Borrower files a bankruptcy petition or if anyone files an involuntary bankruptcy against Borrower; or
(m) if Borrower makes an assignment for the benefit of creditors, or any insolvency, reorganization, arrangement, debt adjustment, receivership, trusteeship, liquidation or other legal or equitable proceedings are instituted by or against Borrower; or
(n) if any judgment, tax lien, municipal charge or tax levy is filed or issued which is issued against Borrower.

EFORM10S696 - 0205

# Direct Installment Loan Disclosure and Note

**Borrower:** MARK J KOSEK
CAROL L KOSEK

**Lender:** PNC Bank, National Association

 **PNCBANK**

**Date:** 07/25/2005

---

### Direct Installment Loan Note—continued

If any event described in (j), (k), (l), (m) or (n) happens, the entire outstanding balance on this Note shall be immediately due without any prior notice to Borrower, or right to cure, except as may be required by law.

A default by Borrower on this Note is a default on every other note, loan or agreement of Borrower with Lender.

**15. General Waiver Provisions.** Borrower waives presentment for payment, demand, protest, notice of protest, dishonor and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower further waives any right to require due diligence in collection by Lender. Any Borrower who is a resident of Virginia further waives the benefit of any exemptions under Virginia law as to the property in which the Lender has obtained a security interest to secure the obligations in this Note.

**16. Delay in Enforcement.** Lender can delay enforcing any rights under this Note without losing any rights. Lender's failure to enforce any right under this Note shall not act as a waiver of that right or preclude the exercise of that right in the event of a future occurrence of the same event. Lender can also extend the time allowed for making payments, and such extension shall not affect the obligations of any Borrower, whether or not that Borrower is given notice of the extension.

**17. Release of Some Borrowers or Some Security.** If there is more than one Borrower, each agrees to remain bound by this Note, although Lender may release any other Borrower or release or substitute any property which is security for the repayment of this Note. Borrower waives all defenses based on suretyship and impairment of collateral or security.

**18. Security Interest Charges.** Borrower agrees to pay any recording, filing, satisfaction and encumbrance fees which may be charged. The charges are to repay Lender for the fees paid to public officials to protect, continue, or release any security interest given in the security agreement or mortgage.

**19. Prepayment.** Borrower may prepay, in full or in part, the amount owed on this Note at any time without penalty. If Borrower prepays the loan in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid.

**20. If Lender Obtains a Security Interest to Secure Borrower's Payment of this Note, Borrower Makes the Following Additional Promises to Lender:**

(a) if property insurance is required by a mortgage and/or security agreement securing the repayment of this Note and/or if flood insurance is required by federal law, BORROWER MAY OBTAIN THE INSURANCE FROM ANYONE OF BORROWER'S CHOICE subject to Lender's reasonable approval. If flood insurance is required, Borrower has been separately notified. The property insurance must cover loss of or damage to the collateral and must be in an amount sufficient to protect Lender's interests; flood insurance must be of the type and in the amount required by federal law;

(b) Borrower agrees to provide Lender evidence of required insurance. All policies must name Lender as a loss payee/secured party and must provide for at least 10 days written notice to Lender of reduction in coverage or cancellation;

(c) if Borrower fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Lender, Lender may notify Borrower that Borrower should purchase the required insurance at Borrower's expense. If Borrower fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Lender, Lender may purchase insurance to protect Lender's interest, to the extent permitted by applicable law, and charge Borrower the cost of the premiums and any other amounts Lender incurs in purchasing the insurance. THE INSURANCE LENDER PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE BORROWER COULD PURCHASE OTHERWISE. Upon demand, Borrower promises to pay Lender the cost of insurance purchased and other amounts incurred by Lender. Borrower agrees that Lender may, if permitted by applicable law, add the cost of the insurance to the amounts on which interest is charged at the rate provided in this Note. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Lender. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If additional information is required concerning insurance or our affiliate arrangements, please contact Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222;

(d) to pay all taxes due on the collateral. If Borrower does not pay the taxes, Lender has the option to pay the taxes. Upon demand, Borrower promises promptly to repay to Lender any amounts paid by Lender for taxes;

(e) if Lender gets a security interest in stock or securities, the value of the collateral may become insufficient to protect Lender. If that happens, Borrower agrees to deliver to Lender additional collateral which Lender believes will be enough to protect Lender;

(f) to allow Lender the right to inspect the collateral at any reasonable time, and to maintain the collateral in good condition and repair; reasonable wear and tear excepted;

(g) if amounts are advanced by Lender under this Note for taxes and/or insurance, Lender may, at its option, if permitted by applicable law, add the amounts so advanced to the outstanding balance and require repayment with interest by increasing the installment payments so that the outstanding principal balance is repaid in full in substantially equal installments on the due date stated in the payment schedule; and

(h) Borrower's promises made and Lender's rights set forth in this section shall not merge with any judgment in any legal action and shall apply until all amounts owed are paid in full.

**21. Lender May Sign Borrower's Name to Insurance Checks.** Borrower gives Lender the right and power to sign Borrower's name on any check or draft from an insurance company. This is limited to a check or draft in payment of returned premiums, benefits under credit life insurance or credit disability insurance, and claims made under physical damage insurance and flood insurance covering property which is security for this loan. Borrower does not have the right to, and agrees that Borrower will not, revoke

the power of Lender to make Borrower's endorsement. Lender may exercise the power for Lender's benefit and not for Borrower's benefit, except as otherwise provided by law.

**22. Costs of Collection.** If Lender files suit or takes action to collect this loan or protect the collateral or the Lender's security interest in it, Borrower agrees to pay Lender's costs and expenses to do so, if Lender is permitted by applicable law to require Borrower to pay these costs. Unless such action is taken in Ohio, this shall include reasonable attorneys' fees and expenses to the maximum amount permitted by applicable law.

**23. Security Interests in Deposits.** The Lender may set-off any amounts due and unpaid under this loan against any of Borrower's money on deposit with Lender. This includes any money which is now or may in the future be deposited with Lender by Borrower or with any co-depositor, including Borrower's spouse. This also includes any property, credits, securities, or money of the Borrower, which may at any time be delivered to or in the possession of the Lender. This may be done without any prior notice to Borrower.

**24. Assignment.** Borrower may not assign or otherwise transfer his rights under this Note to anyone else. Lender may sell, transfer, or assign this Note, and any security agreement and/or mortgage given to secure this Note, and Borrower's rights and obligations under this Note will continue unchanged.

**25. Multiple Parties.** If there is more than one Borrower, each agrees to be responsible to Lender, individually and together, for payment in full of this loan. Borrowers agree that payment of all or part of the proceeds of this Note to any Borrower or to anyone else at the direction of any Borrower will be the equivalent of payment to each Borrower and for the benefit of all Borrowers.

**26. Credit Insurance.** If Borrower has elected to purchase credit insurance, Borrower may cancel that insurance at any time without penalty. In the event of cancellation, the payment amounts shown in the "Payment Schedule" will not decrease; rather, the loan will be paid off more quickly since more of the payment will be directed to payment of the principal balance of the loan.

**27. Heirs and Personal Representatives Bound.** The provisions of this Note shall be binding upon the Borrower, and the heirs and personal representatives of the Borrower.

**28. Governing Law and Construction.** This Note has been accepted by Lender in Pennsylvania and all loans shall be extended by Lender to Borrower in Pennsylvania. Regardless of the state of Borrower's residence or the place to which Borrower submitted an application, Borrower agrees that the provisions of this Note relating to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, Pennsylvania law. Unless preempted by federal law, other substantive terms and provisions shall be governed by and construed in accordance with the law of Pennsylvania; procedural matters relating to the enforcement of the obligations evidenced by the Note and matters related to the granting, perfection and enforcement of a security interest securing this Note, if any, shall be governed by the laws of the state where the enforcement, granting or perfection takes place.

**29. Communication Concerning Disputed Debts. ALL COMMUNICATIONS BY BORROWER TO LENDER CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE LOAN, SHOULD BE SENT TO CENTRALIZED CUSTOMER ASSISTANCE, 2730 LIBERTY AVENUE, PITTSBURGH, PA 15222.**

**30. Credit Reports. BORROWER AUTHORIZES LENDER TO OBTAIN CREDIT REPORTS ON BORROWER FROM TIME TO TIME AT LENDER'S DISCRETION WHILE BORROWER HAS A LOAN OUTSTANDING WITH LENDER.**

**31. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS NOTE AND DISCLOSURE. BY SIGNING BELOW, BORROWER AGREES TO BE LEGALLY BOUND BY ALL THE TERMS AND CONDITIONS OF THIS NOTE.** Each of the Borrowers guarantees that the signature of any Borrower is genuine.

Borrower's Signature  MARK J KOSEK          7-25-05
                                                Date

Borrower's Signature  CAROL L KOSEK         7-25-05
                                                Date

**32. CO-MAKERS SEE NOTICE TO CO-SIGNER BELOW.** Any Borrower who is designated as a Co-Maker agrees to be equally responsible with all other Borrowers for the payment of this loan and performance of all promises in this Note.

Co-Maker's Signature                          Date

Co-Maker's Signature                          Date

---

### NOTICE TO CO-SIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, etc. If this debt is ever in default, that fact may become a part of your credit record.

EFORM108665 - 0205

LACKAWANNA COUNTY
CERTIFIED PROPERTY IDENTIFICATION

ASSESS VAL:
DATE: 8/10/05  AFN
10.00                    CLERK

Prepared by:

PNC Bank - Consumer Loan Center
Mortgage Servicing
Mailstop P5-PCLC-01-I
2730 Liberty Avenue
Pittsburgh, PA 15222
Telephone 412-762-6728

Return to:   PNC Bank - Consumer Loan Center
Mortgage Servicing
Mailstop P5-PCLC-01-I
2730 Liberty Avenue
Pittsburgh, PA 15222
Telephone 412-762-6728

UPI

OLNACS #

# Mortgage
(Closed-End)

**PNC BANK**

THIS MORTGAGE is made on **07/25/2005** .
The Mortgagor is **MARK J & CAROL L KOSEK.**
If there is more than one, the word "Mortgagor" herein refers to each and all of them.
The Mortgagee is **PNC Bank, National Association.**
The word "Borrower" means **MARK J KOSEK , CAROL L KOSEK .**
If there is more than one, the word "Borrower" herein refers to each and all of them.
Borrower owes Mortgagee the sum of **One Hundred Ninety Thousand One Hundred Ninety-four Dollars And Zero Cents**
                                                                            (U.S. $      190,194.00      ).
This debt is evidenced by Borrower's written obligation (referred to herein as the "Note"), dated **07/25/2005** .

    This Mortgage secures to Mortgagee: (a) the repayment of the debt evidenced by the Note, with interest and other charges as provided therein; (b) the payment of all other sums, with interest thereon, advanced hereunder for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred to protect the security of this Mortgage; (c) the payment of all of Mortgagee's costs of collection, including costs of suit and, if permitted by law, reasonable attorneys' fees and expenses, if suit is filed or other action is taken to collect the sums owing or to protect the security of this Mortgage; (d) payment of any refinancing, substitution, extension, modification, and/or renewal of any of said indebtedness, interest, charges, costs and expenses; (e) the performance of Mortgagor's and/or Borrower's covenants and agreements under this Mortgage and the Note; and (f) the repayment of the debt evidenced by any note or agreement which was refinanced by the Note, to the extent that such debt is owed to Mortgagee and has not been paid. For this purpose, Mortgagor does hereby mortgage, grant and convey to Mortgagee the following described property, together with all improvements now or hereafter erected, and all easements, rights and appurtenances thereon, located at and known as:

| **18 CASEY ST** | **OLD FORGE** | **PA** | **18518-1008** | **LACKAWANNA** |
|---|---|---|---|---|
| **Recording Date** | | 03/16/1998 | | |
| **Deed Book Number** | **1617** | **Page Number** | **547** | |
| **Tax Parcel Number** | | | | |
| **Lot and Block Number** | **N/A N/A** | | | |



The word "Property" herein shall mean all of the foregoing mortgaged property.

    To have and to hold the Property unto the Mortgagee, its successors and assigns, forever. Provided, however, that if Mortgagor and/or Borrower shall pay to Mortgagee the said debt, interest, and all other sums and perform all covenants and agreements secured hereby, then this Mortgage and the estate conveyed by it shall terminate and become void.

    **Warranty of Title.** Mortgagor warrants and represents to Mortgagee that: (a) Mortgagor is the sole owner of the Property, and has the right to mortgage and convey the Property; (b) the Property is unencumbered except for encumbrances now recorded; and (c) Mortgagor will defend the title to the Property against all claims and demands except encumbrances now recorded.

PA
EFORM 115323-0505                              Page  1  of ___

**Covenants.** Mortgagor promises and agrees as follows:

(a) Mortgagor will maintain the Property in good order and repair; (b) Mortgagor will comply with all laws respecting the ownership and/or use of the Property; (c) If the Property is part of a condominium or planned unit development, Mortgagor will comply with all by-laws, regulations and restrictions of record; (d) Mortgagor will pay and/or perform all obligations under any mortgage, lien, or security agreement which has priority over this Mortgage; (e) Mortgagor will pay or cause to be paid all taxes and other charges assessed or levied on the Property when due and, upon Mortgagee's request, will deliver to the Mortgagee receipts showing the payment of such charges; (f) While any part of the debts secured by this Mortgage remain unpaid, Mortgagor promises to obtain and keep in force property insurance and, if required by federal law, flood insurance on the Property. The property insurance must cover loss of or damage to the Property and must be in an amount sufficient to protect Mortgagee's interests; flood insurance must be of the type and in the amount required by federal law. Mortgagor agrees to provide Mortgagee evidence of required insurance. All policies must name Mortgagee as a loss payee/secured party and must provide for at least 10 days written notice to Mortgagee of reduction in coverage or cancellation. Mortgagor gives Mortgagee the right and power to sign Mortgagor's name on any check or draft from an insurance company and to apply the money to any debt secured by this Mortgage. This is limited to checks and drafts in payment of a claim under an insurance policy for loss or damage to the Property or for returned or rebated premiums on policies insuring the Property. Mortgagor does not have the right to, and agrees that Mortgagor will not, revoke the power of Mortgagee to make Mortgagor's endorsement. Mortgagee may exercise the power for Mortgagee's benefit and not for Mortgagor's benefit, except as otherwise provided by law; (g) If Mortgagor fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may notify Mortgagor that Mortgagor should purchase the required insurance at Mortgagor's expense. If Mortgagor fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may purchase insurance to protect Mortgagee's interest, to the extent permitted by applicable law, and charge Mortgagor the cost of the premiums and any other amounts Mortgagee incurs in purchasing the insurance. THE INSURANCE MORTGAGEE PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE MORTGAGOR COULD PURCHASE OTHERWISE. Mortgagee may receive reasonable compensation for the services which Mortgagee provides in obtaining any required insurance on Mortgagor's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Mortgagee. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If Mortgagor fails to perform any other duty or obligation required by these Covenants, Mortgagee may, at its sole option, advance such sums as it deems necessary to protect the Property and/or its rights in the Property under this Mortgage. Mortgagor agrees to repay Mortgagee any amounts advanced in accordance with this paragraph, with interest thereon, upon demand; (h) Any interest payable to Mortgagee after a judgment is entered or on additional sums advanced shall be at the rate provided for in the Note; (i) Mortgagee may make reasonable entries upon and inspections of the Property after giving Mortgagor prior notice of any such inspection; (j) Mortgagor will not sell, transfer ownership in, or enter into an installment sale contract for the sale of all or any part of the Property; and (k) The promises, agreements and rights in this Mortgage shall be binding upon and benefit anyone to whom the Property or this Mortgage is transferred. If more than one Mortgagor signs this Mortgage, each and all of them are bound individually and together. The covenants made in this section and Mortgagee's remedies set forth below shall not merge with any judgment entered in any legal action and shall apply until all amounts owed are paid in full.

**Default.** Mortgagor will be in default under this Mortgage: (a) if there is a default under the Note; (b) if Mortgagor breaks any promise made in this Mortgage; (c) if any Mortgagor dies; (d) if any other creditor tries to take the Property by legal process; (e) if any Mortgagor files bankruptcy or if anyone files an involuntary bankruptcy against any Mortgagor; (f) if any tax lien or levy is filed or made against any Mortgagor or the Property; (g) if any Mortgagor has made any false statement in this Mortgage; or (h) if the Property is destroyed, or seized or condemned by federal, state or local government.

**Mortgagee's Remedies.** Unless prohibited by law, if Mortgagor is in default under this Mortgage, Mortgagee may, at its option, after notice required by law, if any, declare due and payable the entire unpaid balance of the sums which are secured by this Mortgage and owing upon the Note. If Mortgagee so declares such entire balance due and payable, Mortgagee may take possession of the Property, collect any and all rents, apply said rents to the indebtedness secured by this Mortgage, foreclose the Mortgage, or take other action upon the Mortgage as permitted or provided by law to collect the balance owing. If a mortgage foreclosure action or any other action on this Mortgage is filed by Mortgagee, and/or if Mortgagee takes any action to protect or enforce its interest in any court, including Bankruptcy Court, Mortgagor agrees to pay to Mortgagee all expenses and costs of such action, including, if permitted by law, reasonable attorneys' fees to the maximum extent permitted by law.

**Remedies Cumulative.** If any circumstance exists which would permit Mortgagee to accelerate the balance, Mortgagee may take such action at any time during which such circumstance continues to exist. Mortgagee's remedies under this Mortgage shall be cumulative and not alternative.

**Delay in Enforcement.** Mortgagee can delay in enforcing any of its rights under this Mortgage or the Note without losing that right. Any waiver by Mortgagee of any provision of this Mortgage or the Note will not be a waiver of the same or any other provision on any other occasion.

Case 5:19-bk-05588-RNO   Doc 3522   Filed 07/26/19   Entered 07/26/19 16:53:20   Desc
Exhibit Document Page 6 of 30

**Assignment.** Mortgagee may sell, transfer or assign this Mortgage without Mortgagor's consent.

**Severability.** If any provision of this Mortgage is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Mortgage.

WITNESS the signing of this Mortgage on the date set forth above, intending to be legally bound.

Witness _Celestine Ferrese_          Mortgagor _Mark J Kosek_

Witness _Celestine Ferrese_          Mortgagor _Carol L Kosek_

**Acknowledgment taken in the STATE OF PENNSYLVANIA, COUNTY OF**   LACKAWANNA

On this   25   day of   JULY                           2005  , before me,    JULIEANN F LESNEFSKY
_____ , the undersigned officer, personally appeared   MARK J & CAROL L KOSEK
_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

COMMONWEALTH OF PENNSYLVANIA                    In Witness Whereof, I hereunder set my hand and official seal.
Notarial Seal                          Signature _Julieann F Lesnefsky_
Julieann F. Lesnefsky, Notary Public
City Of Scranton, Lackawanna County              Title _Notary_
My Commission Expires Nov. 24, 2008
Member, Pennsylvania Association Of Notaries

**Certificate of Residence**

I,    CELESTINE FERRESE                                                                      , do hereby certify that
Mortgagee's precise residence is  Consumer Loan Center, 2730 Liberty Avenue, Pittsburgh, PA 15222

_Celestine Ferrese_
Agent for Mortgagee

Case 5:19-bk-01588-RNO   Doc 362   Filed 07/06/20   Entered 07/06/20 11:53:20   Desc
Exhibit Main Document    Page 7 of 30



**EVIE RAFALKO McNULTY**
*LACKAWANNA COUNTY RECORDER OF DEEDS*
200 North Washington Avenue
Scranton, Pennsylvania 18503
(570) 963-6775

Instrument Number - 200521776

Recorded On 8/11/2005 At 10:18:18 AM                    * Total Pages - 4

* Instrument Type - MORTGAGE
  Invoice Number - ▆▆▆▆▆▆              User - ED
* Mortgagor - KOSEK, MARK J
* Mortgagee - PNC BK NA
* Customer - PNC BANK-LIBERTY AVE-PITTS
* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| STATE JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES - RECORDER OF DEEDS | $13.00 |
| AFFORDABLE HOUSING | $13.00 |
| PARCEL CERTIFICATIONS | $10.00 |
| COUNTY IMPROVEMENT FEE | $2.00 |
| ROD IMPROVEMENT FEE | $3.00 |
| TOTAL | $51.50 |

> This is a certification page
>
> # DO NOT DETACH
>
> This page is now part of this legal document.

**RETURN DOCUMENT TO:**
PNC BANK-LIBERTY AVE-PITTS
2730 LIBERTY AVE
PITTSBURGH, PA 15222

I hereby CERTIFY That this document is recorded in the Recorder of Deeds Office of Lackawanna County, Pennsylvania.



Evelyn Rafalko McNulty
Recorder of Deeds

**\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.**

# HOME EQUITY LOAN MODIFICATION AGREEMENT
### (with balloon payment)

**THIS MODIFICATION AGREEMENT PROVIDES FOR PAYMENT IN FULL OF THE UNPAID BALANCE OF THE AGREEMENT AT MATURITY. YOU MUST REPAY THE ENTIRE BALANCE OWED UNDER THE MODIFICATION AGREEMENT, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT MATURITY. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS MODIFICATION AGREEMENT WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

This Home Equity Loan Modification Agreement (this "Modification Agreement") is made as of **May 8, 2017**, between **MARK J. KOSEK and CAROL L. KOSEK** (individually and collectively, the "Borrower") and PNC Bank, National Association*, for itself, its successors and/or assigns, (the "Lender").

A.  If Borrower's representations, acknowledgments, agreements and preconditions to modification in Section 1 continue to be true in all material respects, then this Modification Agreement will, as provided in such Section 1, amend and supplement the installment Note dated **July 25, 2005**, as it may previously have been amended, (the "Note").

B.  The Note and the Mortgage or Deed of Trust securing the Note together, as they may previously have been amended, are referred to as the "Loan Documents." The Borrower and Lender are sometimes collectively referred to together as the "Parties" and each as a "Party." Capitalized terms used in this Modification Agreement that are not defined herein have the meaning given to them in the Loan Documents.

C.  **This Modification Agreement will not take effect to modify the Note unless the preconditions set forth in Section 1 have been satisfied.**

Please Note: Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

In consideration of the mutual promises and agreements exchanged, and intending to be legally bound, the Parties agree as follows:

1.  **Borrower's Representations, Acknowledgments and Agreements and the Preconditions to Modification.**
    Borrower represents, acknowledges and agrees that:

    a.  Under penalty of perjury, all documents and information provided by Borrower to Lender are true and correct.

    b.  Borrower will sign and return this Modification Agreement and will return the fully signed Modification to Deed of Trust/Mortgage as required by the Lender on or before **May 19, 2017**.

    c.  Borrower will make three (3) trial payments on or before the dates each such payment is due. Borrower has received documentation stating the amount of the trial payments and the date each such payment will be due. Borrower understands and agrees that Lender will continue to report the delinquency status of the Borrower's account ("Account"), if applicable, as well as Borrower's entry into this Modification Agreement in accordance with applicable law.

    d.  If, prior to the Modification Effective Date (as defined in Section 2), (i) the Lender determines that Borrower's representations in Section 1(a) are no longer true and correct, (ii) Borrower has not signed and returned the documents as required in Section 1(b), or (iii) Borrower has not made a trial payment on or before the date such payment is due, as required by Section 1(c),

*If another lender is identified in the Loan Documents, PNC Bank, National Association is the successor in interest to such lender.

the modification of the Loan Documents will not take effect, this Modification Agreement will terminate and the Lender will have all of its rights and remedies as provided by the Loan Documents. Interest will continue to accrue, including after the entire balance is declared to be due in full, at the interest rate determined under the Note.

e.  If the Lender has paid amounts to third parties for flood insurance premiums on the Property, unpaid taxes, including interest and penalties and/or court costs and attorneys' fees to enforce Lender's rights under the Loan Documents, the total amount of these costs and expenses is included in the New Balance and will be paid as set forth in Section 2(b).

f.  If Borrower purchased credit insurance or the Installment Loan Credit Protection Plan (Debt Cancellation) under the Note, such credit insurance or Debt Cancellation plan will be cancelled as of the Modification Effective Date set forth in Section 2.

g.  If the Note includes late charges or other charges, on the Modification Effective Date set forth in Section 2, Lender will waive all unpaid late charges and other charges (but not unpaid interest and any costs and expenses paid to third parties as described in Section 1(e) above) that remain unpaid under the Note. If the Loan Documents are not modified, Lender will not waive these amounts. Lender reserves the right to charge late charges, Return Check Fees or returned instrument charges after the Modification Effective Date, if applicable, under the terms provided in the Note.

☐  h.  The Lender has forgiven a portion of the principal due and owing under the Note, in the amount of **N/A**. The forgiven amount will be reported to the Internal Revenue Service and may have tax consequences. Borrower should seek guidance from a tax professional.

2.  **The Modification.** If Borrower's representations in Section 1 continue to be true in all material respects and all of the preconditions in Section 1 have been met, the Note will automatically become modified in the month after the final trial payment is made (the "Modification Effective Date"). The first modified monthly payment will be due in the month following the Modification Effective Date on the payment due date determined under the Note (the "Modification Payment Date"), and continuing until the Maturity Date unless the Note is earlier due in full. Borrower understands and agrees that:

a.  The date on which all amounts owing under this Modification Agreement are due is called the "Maturity Date". The Maturity Date is **May 1, 2045**, which may have been extended beyond the maturity date in the Loan Documents.

b.  Borrower's new balance under this Modification Agreement is **$224,108.11** (the "New Balance"). The New Balance includes any amounts that will be past due as of the Modification Effective Date, and consists of: the sum of (A) the unpaid principal balance of the sums loaned to Borrower under the Note, plus (B) any unpaid interest, plus (C) any amounts paid to third parties as described in Section 1(e). **Borrower understands and agrees that by agreeing to include any amounts paid to third parties in the New Balance, such amounts may accrue interest based on the interest rates in effect under this Modification Agreement.** Any unpaid flood insurance premiums shall be paid as billed in addition to the monthly payment amount. **$49,348.60 of the New Balance shall be deferred (the "Deferred Balance") and shall be payable as provided in the last sentence in this section.** Borrower will not pay interest on the Deferred Balance prior to the Maturity Date (unless, as a result of Borrower default, the entire New Balance is due) or make monthly payments on the Deferred Balance. Borrower must pay the Deferred Balance by the earliest of: (i) the date Borrower sells or transfers an interest in the Property; (ii) the date the Borrower pays or is required to pay the entire Interest Bearing Balance (as defined below) or refinances the Property or (iii) the Maturity Date.

c.  The New Balance <u>less</u> the Deferred Balance is referred to as the "Interest Bearing Balance", and this amount is **$174,759.51**.

d.  Interest at the rate of **1.99%** will begin to accrue on the Interest Bearing Balance as of the Modification Effective Date until paid in full. Beginning on the Modification Payment Date,

2

Case 5:19-bk-01588-RNO    Doc 52    Filed 10/09/20    Entered 10/09/20 11:53:20    Desc
Case 5:19-bk-01588-RNO    Main Document    Filed 07/26/19    Entered 07/26/19 16:26:20    Desc
Exhibit Loan Documents    Page 10 of 30

the monthly payment under this Modification Agreement will be **$678.83**. If applicable, the monthly payment will include unpaid flood insurance premiums until paid in full. **The interest rates and monthly payments applicable under this Modification Agreement may be higher than the interest rate and payment provided in the Note.**

e.   On the Maturity Date, the final payment under this Modification Agreement will be an amount equal to (i) the unpaid balance of the New Balance, including the Deferred Balance, <u>plus</u> (ii) all accrued and unpaid interest on the Interest Bearing Balance, <u>plus</u> (iii) any other amounts owed under the Loan Documents.

f.   Interest paid pursuant to this Modification Agreement will be computed on a simple interest basis based upon a 365-day year (or 366-day year in a leap year), but calculated on actual days. Borrower's actual payments could affect the amount Borrower will pay under this Modification Agreement.

g.   Monthly payments will be applied first to all unpaid interest on the Interest Bearing Balance, then to any unpaid flood insurance premium, late charges, Return Check Fees and returned instrument charges (if applicable under the Note) and then to the Interest Bearing Balance. If Borrower makes a partial prepayment of principal, the Lender may apply that partial prepayment to any unpaid late charges, Return Check Fees and returned instrument charges (if applicable under the Note) and then to the Interest Bearing Balance. To the extent that the principal prepayment is equal to or exceeds the Interest Bearing Balance, the prepayment will be applied to Deferred Balance. Prepayments will not change the due dates or amounts of monthly payments.

h.   Borrower will be in default if Borrower does not comply with the terms of the Loan Documents, as modified by this Modification Agreement.

i.   In the event of a default under the Loan Documents, as modified by this Modification Agreement, interest will accrue on the unpaid amount of the New Balance, including after the entire unpaid balance is declared to be due in full, at the applicable rate set forth in Section 2(d) when the default occurred.

j.   If Borrower purchased credit insurance or the Installment Loan Credit Protection Plan (Debt Cancellation) under the Note, such credit insurance or Debt Cancellation Plan is cancelled.

k.   The terms in Section 2 will supersede any provision to the contrary in the Note.

3.   **Additional Agreements.** Borrower understands and agrees to the following:

a.   All persons who signed the Note, or their authorized representative(s) have signed this Modification Agreement, unless: (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the Property need not sign this Modification Agreement (although the non-signing spouse may be held liable for the obligation under the Note); or (iii) the Lender has waived this requirement in writing.

b.   This Modification Agreement supersedes the terms of any modification, forbearance or workout plan that the Borrower has previously entered into with Lender.

c.   Except as expressly modified by this Modification Agreement, Borrower will comply with and is bound by all covenants, agreements, and requirements of the Note.

d.   The Note as modified by this Modification Agreement is a duly valid, binding agreement, enforceable in accordance with its terms and is hereby reaffirmed and remains in full force and

Case 5:19-bk-01588-RNO    Doc 52    Filed 10/09/20    Entered 10/09/20 11:53:20    Desc
Case 5:19-bk-01588-RNO    Main Document    Filed 07/26/19    Page 11 Entered 07/26/19 16:26:20    Desc
Exhibit Loan Documents    Page 11 of 20

effect. Lender's rights include, but are not limited to, the right to charge late charges, Return Check Fees or returned instrument charges if and to the extent provided under the Note.

e.  Nothing in this Modification Agreement will be understood or construed as a satisfaction or release, in whole or in part, of the obligations in the Note, or to satisfy or release the Security Instrument, in whole or in part.

f.  Borrower will execute and deliver such other documents as may be reasonably necessary to either: (i) put into effect the terms and conditions of this Modification Agreement or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after the Modification Effective Date. Borrower understands that a correct Modification Agreement or letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Modification Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Modification Agreement or letter agreement, the terms of the original Note and other Loan Documents shall continue in full force and effect and such terms will not be modified by this Modification Agreement.

g.  Borrower is solely responsible for the payment of any federal, state and/or local taxes with respect to any principal forgiveness, if provided in Section 1(h). Borrower understands, agrees and acknowledges that Lender has not made any representations to the Borrower concerning the taxability and/or non-taxable status of any such principal forgiveness.

h.  If any document related to the Note and/or this Modification Agreement is lost, misplaced, misstated, inaccurately reflects the true terms and conditions of the loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary (all such documents are the "Documents"). Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

4

**If Borrower consents to receiving calls as described in this section, please sign below:** Borrower consents to receiving calls, including calls using an automatic telephone dialing system and/or an artificial or prerecorded voice, and text messages from Lender or any of its affiliates, agents or third party representatives at any and all of Borrower's telephone numbers, including, but not limited to, Borrower's wireless (mobile/cellular) number, or any cell phone number Borrower may provide to Lender, for any purpose related to the Borrower's Account, including servicing purposes and debt collection purposes, with respect to this Modification Agreement and the Loan Documents, the Account related to the Loan Documents and any other account at Lender or any of its affiliates. These calls and messages may incur access fees from Borrower's cellular provider. Lender may monitor telephone calls with Borrower to assure quality service.

_____
Borrower signature

_____
Borrower signature

[SIGNATURE PAGES TO FOLLOW]

In Witness Whereof, the Borrower(s) have executed this Modification Agreement.

Witness

_____

_____

_____ 
MARK J. KOSEK

_____ 
CAROL L. KOSEK


In Witness Whereof, the Lender has executed this Modification Agreement.

PNC BANK, NATIONAL ASSOCIATION:

By: _____ 
Michael White

Its: Authorized Representative

Case 5:19-bk-01588-RNO    Doc 52    Filed 10/09/20    Entered 10/09/20 11:53:20    Desc
Case 5:19-bk-01588-RNO    Main Document    Filed 07/26/19    Page 14 of 30    Entered 07/26/19 16:26:20    Desc
Exhibit Loan Documents    Page 14 of 30

▮▮▮▮▮▮▮▮▮

After Recording Return To:
BR-YB58-01-6 Lending Services
PNC Bank, National Association
PO Box 5570
Cleveland, OH 44101-8887

This document was prepared by **Theresa Smith**

_____ [Space Above This Line For Recording Data] _____

# MODIFICATION TO DEED OF TRUST/MORTGAGE
### (with balloon payment)

THE MODIFICATION OF THE HOME EQUITY LOAN THAT IS SECURED BY THE DEED OF TRUST/MORTGAGE PROVIDES FOR PAYMENT IN FULL OF THE UNPAID BALANCE OF THE HOME EQUITY LOAN MODIFICATION AGREEMENT AT MATURITY. YOU MUST REPAY THE ENTIRE BALANCE OWED UNDER THE HOME EQUITY LOAN MODIFICATION AGREEMENT, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT MATURITY. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THE HOME EQUITY LOAN MODIFICATION AGREEMENT WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

This Modification to Deed of Trust/Mortgage (this "Modification") is made as of **May 8, 2017**, between **MARK J. KOSEK and CAROL L. KOSEK** (individually and collectively, the "Owner") with an address of **18 CASEY ST OLD FORGE, PA 18518** and PNC Bank, National Association [successor in interest to (N/A)], with an address of 6750 Miller Road, Brecksville OH 44141, for itself, its successors and/or assigns, (the "Lender"). In this Modification, the word "Borrower" means each person, individually and jointly, who entered into the Home Equity Loan. The Deed of Trust/Mortgage is referred to as the "Security Instrument" All capitalized terms not defined in this Modification shall have the same meaning as given in the Security Instrument.

A. Borrower has entered into a promissory Note (the "Note") dated **July 25, 2005** which established a home equity loan, and which is secured by a Security Instrument dated **July 25, 2005** and recorded on **August 11, 2005** for **$190,194.00** as Instrument No. **200521776** in Book N/A at Page N/A of the

**LACKAWANNA** County Land Records, covering real property located at **18 CASEY ST OLD FORGE, PA 18518** (the "Property"), and described as follows:

SEE ATTACHED EXHIBIT "A"

B. Borrower has requested and Lender has agreed to modify certain terms of the Note and Security Instrument, subject to preconditions and terms as set forth in Home Equity Loan Modification Agreement dated the same date as this Modification.

NOW THEREFORE, in consideration of the mutual promises contained in this Modification, Owner and Lender agree as follows:

**This Modification will not take effect to modify the Security Instrument unless the preconditions set forth in the Home Equity Loan Modification Agreement have been satisfied.**

A. **MODIFICATION OF SECURITY INSTRUMENT.** As of **May 23, 2017** (the "Modification Effective Date"), the Security Instrument is modified as follows:

1. <u>Maturity Date of Security Instrument.</u> The date on which all amounts owing under the Security Instrument and Home Equity Loan Modification Agreement are due is called the "Maturity Date". The Maturity Date is **May 1, 2045**, which may have been extended beyond the maturity date in the Security Instrument.

2. The new balance under the Home Equity Loan Modification Agreement and which is secured by the Security Instrument is **$224,108.11** (the "New Balance"). The New Balance includes all amounts owing as of the Modification Effective Date, and consists of the unpaid principal balance of the sums loaned to the Borrower, unpaid interest and amounts paid to third parties for flood insurance premiums on the Property, unpaid taxes, including interest and penalties and/or court costs and attorneys' fees to enforce Lender's rights. As provided in the Home Equity Loan Modification Agreement, part of the New Balance shall be deferred and shall be payable when the final payment is due. The interest rates and monthly payments in the Note have been modified as provided in the Home Equity Loan Modification Agreement.

3. On the Maturity Date, the final payment will be an amount equal to (i) the unpaid balance of the New Balance, including the deferred balance, <u>plus</u> (ii) all accrued and unpaid interest on the New Balance, <u>plus</u> (iii) any other amounts owed under the Home Equity Loan Modification Agreement and the Security Instrument.

4. A default under the Home Equity Loan Modification Agreement will be a default under this Modification and Lender shall have all of its rights and remedies under the Security Instrument.

B. **ADDITIONAL AGREEMENTS.** Owner understands and agrees to the following:

1. All persons who signed the Security Instrument, or their authorized representative(s) have signed this Modification, unless: (i) an Owner or co-Owner is deceased; (ii) the Owner and co-Owner are divorced and the Property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the Property need not sign this Modification (although the non-signing spouse may be held liable for the obligations under the Note); or (iii) the Lender has waived this requirement in writing.

2. Any Owner who signs this Modification but did not sign the Note is not personally obligated to pay the sums secured by the Security Instrument as modified by this Modification.

3. As of the Modification Effective Date, Borrower understands that Lender will only allow the transfer and assumption of the Security Instrument and Home Equity Loan Modification Agreement to a

transferee of the Property as permitted under the Garn St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Security Instrument or any of the loan documents including the Home Equity Loan Modification Agreement. Except as provided in this Section B(3), this Security Instrument may not be assigned to, or assumed by, a buyer or transferee of the Property.

4. This Modification will not be understood or construed as a satisfaction or release, in whole or in part, of the obligations in the Security Instrument, or to satisfy or release the Security Instrument, in whole or in part.

5. Except as expressly modified by this Modification, Owner will comply with and is bound by all covenants, agreements, and requirements of the Security Instrument.

6. The Security Instrument as modified by this Modification is a duly valid, binding agreement, enforceable in accordance with its terms and is hereby reaffirmed and remains in full force and effect.

7. Owner will execute and deliver such other documents as may be reasonably necessary to either: (i) put into effect the terms and conditions of this Modification or (ii) correct the terms and conditions of this Modification if an error is detected after the Modification Effective Date. Owner understands that a correct Modification or letter agreement containing the correction will be provided to Owner for Owner's signature. At Lender's option, this Modification will be void and of no legal effect upon notice of such error. If Owner elects not to sign any such corrected Modification or letter agreement, the terms of the original loan documents shall continue in full force and effect and the terms of the Note and Security Instrument will not be modified.

8. If any document, including the Security Instrument, related to this Modification is lost, misplaced, misstated, inaccurately reflects the true terms and conditions of the loan as modified, or is otherwise missing, Owner will comply with the Lender's request to acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary (all such documents are the "Documents"). Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

In Witness Whereof, the Owner(s) have executed this Modification to Deed of Trust/Mortgage.

Owner:

_____
**MARK J. KOSEK**

_____
**CAROL L. KOSEK**

_____ [Space Below This Line For Acknowledgment] _____

STATE OF Pennsylvania ) SS
COUNTY OF Luzerne )

On (Month/Day/Year) May 16, 2017 , personally appeared **MARK J. KOSEK and CAROL L. KOSEK**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Signature _____ (Seal)
Notary Printed Name: Brenda L. Briggs
My Commission Expires: 10/19/18
County of Residence: Luzerne

**COMMONWEALTH OF PENNSYLVANIA**
NOTARIAL SEAL
Brenda L. Briggs, Notary Public
Hanover Twp., Luzerne County
My Commission Expires Oct. 19, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

In Witness Whereof, the Lender has executed this Modification to Deed of Trust/Mortgage.

PNC BANK, NATIONAL ASSOCIATION:

By: _____
      **Michael White**

Its: Authorized Signer

_____ [Space Below This Line For Acknowledgment] _____

STATE OF OHIO                          )
                                       )   ss:
COUNTY OF CUYAHOGA                     )

On this, the 19TH day of MAY, 2017 before me, a Notary Public, the undersigned officer, personally appeared **Michael White**, who acknowledged himself/herself to be an authorized signer of PNC Bank, National Association and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of said bank as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public: _____
Printed Name: DAVID O GRENERT
My Commission Expires: 2/23/19
County of Residence: SUMMIT

DAVID GRENERT, NOTARY PUBLIC
COMM. EXP. FEBRUARY 23, 2019
STATE OF OHIO

Indiana: This instrument prepared by **Theresa Smith**.
I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. **Theresa Smith**.

# EXHIBIT "A" LEGAL DESCRIPTION

Account #: Index #:
Order Date : **01/05/2017** Registered Land:
██████████████████
Name : **MARK J. KOSEK**
　　　**CAROL L. KOSEK**
████████████████

ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF OLD FORGGE, COUNTY OF LACKAWANNA, AND STATE OF PENNSYLVANIA, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT BEING THE INTERSECTION OF THE SOUTHWESTERLY LINE OF CASEY AVENUE AND THE LINE DIVIDING LOTS #61 AND #60 ACCORDING TO THE PLAN OF THE FORGE ESTATES LIMITED RESIDENTIAL DEVELOPMENT; THENCE, ALONG CASEY AVENUE, SOUTH FORTY-THREE DEGREES, FIFTEEN MINUTES EAST (S. 43 DEG. 15' E.), EIGHTY-ONE FEET (81.00') TO A POINT; THENCE, ALONG THE NORTHWESTERLY LINE OF LOT #59, SOUTH FORTY-SIX DEGREES, FORTY-FIVE MINUTES WEST (S. 46 DEG. 45' W.), ONE-HUNDRED TEN FEET (110.00') TO A POINT BEING THE COMMON CORNER OF LOTS #59, #70, #69, AND #60; THENCE, ALONG THE NORTHEASTERLY LINE OF LOT #69, NORTH FORTY-THREE DEGREES, FIFTEEN MINUTES WEST (N. 43 DEG. 15' W.), EIGHTYONE FEET (81.00') TO A POINT BEING THE COMMON CORNER OF LOTS #69, #68, #61, AND #60; THENCE, ALONG THE SOUTHEASTERLY LINE OF LOT #61, NORTH FORTY-SIX DEGREES, FORTY-FIVE MINUTES EAST (N. 46 DEG. 45' E.), ONE-HUNDRED TEN FEET (110.00') TO THE POINT OF BEGINNING FOR LANDS DESCRIBED HEREIN; CONTAINING AN AREA OF 8,910 SQUARE FEET OF LAND AND BEING ALL OF LOT #60 ON CASEY AVENUE AS SHOWN ON A PLAN ENTITLED "FINAL LOT LAYOUT OF FORGE ESTATES LIMITED" DATED MARCH 01, 1988.

SUBJECT TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL ZONING, BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS OF TENANTS IN POSSESSION, AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT YET DUE AND PAYABLE.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN VOLUME 1617, PAGE 546, OF THE LACKAWANNA COUNTY, PENNSYLVANIA RECORDS.



**EVIE RAFALKO MCNULTY**
Lackawanna County Recorder of Deeds
Gateway Center
135 Jefferson Avenue
Scranton, Pennsylvania 18503

This is a certification page
***This page is now part of this legal document – DO NOT DETACH***



**Recording:**

| Recording Fees - ROD | 23.50 |
|---|---|
| Parcel Certification | 10.00 |
| State Writ Tax | 0.50 |
| County Improvement Fee | 2.00 |
| ROD Improvement Fee | 3.00 |

| Total: | 39.00 |
|---|---|

**** NOTICE: THIS IS NOT A BILL ****

```
Clerk:        JG
Instr #:      201306019
Rec Date:     03/25/2013 11:38:17 AM
Doc Grp:      M
Descrip:      MORTGAGE MODIFICATION/AGREEMENT
Num Pgs:      10
Rec'd Frm:    PNC BANK-PO BOX 5570

Party1:       KOSEK MARK J
Party2:       PNC BANK
Town:         OLD FORGE BOROUGH
```



I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Lackawanna County, Pennsylvania.



*Evelyn Rafalko McNulty*

Evelyn Rafalko McNulty
Recorder of Deeds

** Information may change during the verification process and may not be reflected on this page.

```
Record and Return To:


PNC BANK-PO BOX 5570
PO BOX 5570
CLEVELAND OH 44101
```

This instrument was prepared by Shannon Conrad

LACKAWANNA COUNTY
Certified Property Identification

**After Recording Return To:**
BR-YB58-01-6 Lending Services
PNC Bank, National Association
PO Box 5570
Cleveland,OH 44101-8887
Toll-Free: 866-622-2657

USE:_____ASSESS VAL_____

CLERK____AN____

/100

_____ [Space Above This Line For Recording Data] _____

# HOME EQUITY LOAN MODIFICATION AGREEMENT

This Home Equity Loan Modification Agreement (this Modification Agreement") is made as of **February 26, 2013,** between **MARK J KOSEK and CAROL L KOSEK** (individually and collectively, the "Borrower") and PNC Bank, National Association*, for itself, its successors and/or assigns, (the "Lender").

If Borrower's representations, acknowledgments, agreements and preconditions to modification in Section 1 continue to be true in all material respects, then this Modification Agreement will, as provided in such Section 1, amend and supplement (1) the installment note dated **July 25, 2005,** as it may previously have been amended, (the "Note") and (2) the Mortgage, Deed of Trust or Security Deed, (the "Security Instrument"), bearing the same date as and securing, the Note and recorded in ~~Book/Page or~~ Instrument Number 200521776, in the **LACKAWANNA** County Records of **PA** which covers certain property described in the Security Instrument and defined therein as the "Property", commonly known as **18 CASEY ST OLD FORGE PA 18518**, the real property described being set forth as follows:

**SEE ATTACHED EXHIBIT "A"**   *Original mortgage amount of #190,194.00*

The Note and Security Instrument together, as they may previously have been amended, are referred to as the "Loan Documents." The Borrower and Lender are sometimes collectively referred to together as the "Parties" and each as a "Party." Capitalized terms used in this Modification Agreement and not defined herein have the meaning given to them in the Loan Documents.

*If another lender is identified in the Loan Documents, PNC Bank, National Association is the successor by merger to such lender.

v1.4                                                                 1

**This Modification Agreement will not take effect to modify the Loan Documents unless the preconditions set forth in Section 1 have been satisfied.**

Please Note: Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

In consideration of the mutual promises and agreements exchanged, and intending to be legally bound, the Parties hereto agree as follows:

1. **Borrower's Representations, Acknowledgments and Agreements and the Preconditions to Modification.** Borrower understands, acknowledges and agrees that:

   a. Under penalty of perjury, all documents and information provided by Borrower to Lender are true and correct.

   b. Borrower will sign and return this Modification Agreement as required by the Lender on or before **March 08, 2013.**

   c. If, prior to the Modification Effective Date (as defined in Section 2), (i) the Lender determines that Borrower's representations in Section 1(a) are no longer true and correct, or (ii) Borrower has not signed and returned this Modification Agreement as required in Section 1(b), the Loan Documents will not be modified, this Modification Agreement will not take effect and Lender will have all of its rights and remedies as provided by the Loan Documents.

   d. The Lender has paid costs and expenses to third parties for flood insurance premiums on the Property and/or court costs and attorneys' fees to enforce Lender's rights under the Loan Documents. The total amount of these costs and expenses is included in the New Principal Balance set forth in Section 2(b).

   e. If Borrower purchased credit insurance or the Installment Loan Credit Protection Plan (Debt Cancellation) under the Note, such credit insurance or Debt Cancellation plan will be cancelled as of the Modification Effective Date set forth in Section 2.

   f. The Loan Documents will not be modified unless and until (i) the Lender has received any title endorsement(s), title insurance product(s), subordination agreement(s) and/or mortgage insurer approval(s) that the Lender deems necessary to ensure that the Security Instrument, as modified, retains the same lien position that it was in prior to the Modification Effective Date and is fully enforceable and that any mortgage insurance policy is fully enforceable and (ii) the Modification Effective Date has passed. The Lender is not required to make any modification of the Loan Documents if the Borrower fails to meet any one of the requirements under this Modification Agreement.

   g. If the Note includes late charges or other charges, on the Modification Effective Date set forth in Section 2, Lender will waive all unpaid late charges and other charges (but not unpaid interest and any costs and expenses paid to third parties as described in Section 1(d) above) that remain unpaid under the Note. If the Loan Documents are not modified, Lender will not waive these amounts. Lender reserves the right to charge late charges, Return Check Fees or returned instrument charges after the Modification Effective Date, if applicable, under the terms provided in the Note.

   ☐ h. The Lender has forgiven a portion of the principal due and owing under the Note, in the amount of _____ . The forgiven amount will be reported to the Internal Revenue Service and may have tax consequences. Borrower should seek guidance from a tax professional.

2

2.     **The Modification.** If Borrower's representations in Section 1 continue to be true in all material respects and the preconditions to modification set forth in Section 1 have been met, the Loan Documents will automatically become modified on **March 13, 2013** (the "Modification Effective Date"). The first modified monthly payment will be due on **April 01, 2013,** and continuing on the payment date determined under the Note until the Maturity Date. Borrower understands and agrees that:

a.     The date on which all amounts owing under this Modification Agreement and the Loan Documents are due is called the "Maturity Date." The Maturity Date is **April 01, 2032,** which may have been extended beyond the maturity date in the Loan Documents.

b.     Borrower's new principal balance under this Modification Agreement is **$209,870.42** (the "New Principal Balance"). The New Principal Balance includes any amounts that will be past due as of the Modification Effective Date, and consists of: (i) the sum of (A) the unpaid principal balance of the sums loaned to Borrower, plus (B) any unpaid interest, plus (C) any costs and expenses paid to third parties as described in Section 1(d). **Borrower understands and agrees that by agreeing to include any costs and expenses paid to third parties in the New Principal Balance, such amount will accrue interest based on the interest rates in effect under this Modification Agreement. $30,682.46 of the New Principal Balance, consisting of the accrued unpaid interest, shall be deferred (the "Deferred Interest") and shall be payable as provided in the last sentence in this section.** Borrower will not pay interest on the Deferred Interest prior to the Maturity Date (unless, as a result of Borrower default, the entire New Principal Balance is due) or make monthly payments on the Deferred Interest. Borrower must pay the Deferred Interest by the earliest of: (i) the date Borrower sells or transfers an interest in the Property; (ii) the date the Borrower pays or is required to pay the entire Interest Bearing Principal Balance (as defined below) or refinances the Property or (iii) the Maturity Date.

c.     The New Principal Balance less the Deferred Interest is referred to as the "Interest Bearing Principal Balance", and this amount is **$179,187.96.**

d.     Interest at the rate of 1% will begin to accrue on the Interest Bearing Principal Balance as of **March 13, 2013** for the first 5 years. The monthly payment of principal and interest for the first **5** years will be **$934.79** and the first new monthly payment will be due on the date set forth in the second sentence of Section 2.

e.     During year **6** and continuing thereafter until the Maturity Date, interest at the rate of **3.25%** will accrue on the Interest Bearing Principal Balance as of **March 02, 2018.** The new monthly payment of principal and interest for year **6** and thereafter until the Maturity Date will be approximately **$966.17** and the first new monthly payment will be due on **April 01, 2018.**

f.     On the Maturity Date, the final payment under this Modification Agreement will be an amount equal to (i) the unpaid balance of the New Principal Balance, plus (ii) all accrued and unpaid interest on the Interest Bearing Principal Balance, plus (iii) any other amounts owed under the Loan Documents.

3

Case 5:19-bk-01588-RNO     Doc 52     Filed 10/09/20     Entered 10/09/20 11:53:20     Desc
Case 5:19-bk-01588-RNO     Main Document     Page 24 of 30     Entered 07/26/19 16:26:20     Desc
Exhibit Loan Documents     Page 24 of 30

g. Interest paid pursuant to this Modification Agreement will be computed on a simple interest basis based upon a 365-day year (or a 366-day year in a leap year), but calculated on actual days. Borrower's actual payments could affect the amount Borrower will pay under this Modification Agreement. Payments will be applied first to all unpaid interest on the Interest Bearing Principal Balance, then to any unpaid late charges, Return Check Fees and returned instrument charges (if applicable under the Note) and then to the Interest Bearing Principal Balance. If Borrower makes a partial prepayment of principal, the Lender may apply that partial prepayment to any unpaid late charges, Return Check Fees and returned instrument charges (if applicable under the Note) and then to the Interest Bearing Principal Balance. To the extent that the principal prepayment is equal to or exceeds the Interest Bearing Principal Balance, the prepayment will be applied to Deferred Interest. Prepayments will not change the due dates or amounts of monthly payments.

h. If Borrower elected the Automatic Payment Plan under the Note or authorized automatic payment of the Note from a deposit account ("Automatic Payment Program"), the Borrower may be required to sign a new authorization to continue the Automatic Payment Program once the monthly payment changes under Section 2(d) and Section 2(e). If the Automatic Payment Program is cancelled, that cancellation will not affect the interest rate required to be paid under this Modification Agreement.

i. Borrower will be in default if Borrower does not comply with the terms of the Loan Documents, as modified by this Modification Agreement.

j. In the event of a default under the Loan Documents, as modified by this Modification Agreement, interest will accrue on the unpaid amount of the New Principal Balance, including after the entire unpaid balance is declared to be due in full, at the rate set forth in Section 2(d) or Section 2(e) as applicable when the default occurred.

k. If Borrower purchased credit insurance or the Installment Loan Credit Protection Plan (Debt Cancellation) under the Note, such credit insurance or Debt Cancellation Plan is cancelled.

l. The terms in Section 2 will supersede any provisions to the contrary in the Loan Documents.

3. **Additional Agreements.** Borrower understands and agrees to the following:

a. All persons who signed the Loan Documents, or their authorized representative(s) have signed this Modification Agreement, unless: (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the Property need not sign this Modification Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing. Any Borrower who signs this Modification Agreement but did not sign the Note is not personally obligated to pay the sums secured by the Security Instrument as modified by this Modification Agreement.

b. This Modification Agreement supersedes the terms of any modification, forbearance or workout plan that Borrower has previously entered into with Lender.

c. Except as expressly modified by this Modification Agreement, Borrower will comply with and is bound by all covenants, agreements, and requirements of the Loan Documents.

4

d. The Loan Documents as modified by this Modification Agreement are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed and remain in full force and effect. Lender's rights include, but are not limited to, the right to charge late charges, Return Check Fees or returned instrument charges if and to the extent provided under the Note.

e. Nothing in this Modification Agreement will be understood or construed as a satisfaction or release, in whole or in part, of the obligations in the Loan Documents, or to satisfy or release the Security Instrument, in whole or in part.

f. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, Lender shall not exercise this option if applicable law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give Borrower notice that all amounts secured by the Security Instrument are due in full. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay such amount. If Borrower fails to pay the amount owed prior to the expiration of this period, Lender may exercise any remedies permitted by the Security Instrument.

g. As of the Modification Effective Date, Borrower understands that Lender will only allow the transfer and assumption of the Loan Documents, including this Modification Agreement, to a transferee of the Property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan Documents including this Modification Agreement. Except as noted in this Section 3(g), this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

h. Borrower will cooperate fully with Lender in obtaining any title endorsement(s), title insurance product(s) and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the Security Instrument, as modified, retains the same lien position that is in effect prior to the Modification Effective Date and/or is fully enforceable upon modification.

i. Borrower will execute and deliver such other documents as may be reasonably necessary to either: (i) put into effect the terms and conditions of this Modification Agreement or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after the Modification Effective Date. Borrower understands that a corrected Modification Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Modification Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Modification Agreement or letter agreement, the terms of the original Loan Documents shall continue in full force and effect and such terms will not be modified by this Modification Agreement.

j. Borrower is solely responsible for the payment of any federal, state and\or local taxes with respect to any principal forgiveness, if provided in Section 1(h). Borrower understands, agrees and acknowledges that Lender has not made any representations to the Borrower concerning the taxability and/or non-taxable status of any such principal forgiveness.

5

k.  If any document related to the Loan Documents and/or this Modification Agreement is lost, misplaced, misstated, inaccurately reflects the true terms and conditions of the loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary (all such documents are the "Documents"). Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

l.  **If Borrower consents to receiving calls as described in this section, please sign below:** Borrower consents to receiving calls, including calls using an automatic telephone dialing system and/or an artificial or prerecorded voice, and text messages from Lender or any of its affiliates, agents or third party representatives at any and all of Borrower's telephone numbers, including, but not limited to, Borrower's wireless (mobile/cellular) number, or any cell phone number Borrower may provide to Lender, for any purpose related to the Borrower's Account, including servicing purposes and debt collection purposes, with respect to this Modification Agreement and the Loan Documents, the Account related to the Loan Documents and any other account at Lender or any of its affiliates. These calls and messages may incur access fees from Borrower's cellular provider. Lender may monitor telephone calls with Borrower to assure quality service.

_____  Mark S. Kosek
Borrower signature

_____  Carol L. Kosek
Borrower signature

[SIGNATURE PAGES TO FOLLOW]

6

In Witness Whereof, the Borrower(s) have executed this Modification Agreement.

_Mark J Kosek_ (signature)

MARK J KOSEK

_Carol L Kosek_ (signature)

CAROL L KOSEK

_____ [Space Below This Line For Acknowledgments] _____

STATE OF _____PA._____ ) SS
COUNTY OF __Lackawanna__ )

On (Month/Day/Year) ___March 8, 2013___, personally appeared **MARK J KOSEK and CAROL L KOSEK** , personally known to me (or proved to me on the basis of satisfactory evidence) to the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument to the person(s) or the entity upon behalf of which the person(s) acted executed the instruments.

I certify under PENALTY OF PERJURY under the law of the State of ___PA.___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Signature _Suzanne K Moraski_
Notary Printed Name: _Suzanne K Moraski_
My Commission Expires: _June 3, 2016_

```
NOTARIAL SEAL
SUZANNE K MORASKI
Notary Public
DUNMORE BORO., LACKAWANNA COUNTY
My Commission Expires Jun 3, 2016
```

7

In Witness Whereof, the Lender has executed this Modification Agreement

PNC BANK:

By: _____

[        Daiva Eidukaite

Its: Authorized Representative

_____[Space Below This Line For Acknowledgments]_____

STATE OF OHIO                    )        ss:

COUNTY OF CUYAHOGA              )

On this, the _10_ day of _March_ , _2013_ before me, a Notary Public, the undersigned officer, Personally appeared   Daiva Eidukaite , who acknowledged himself/herself to be an authorized signer of the PNC Bank, N.A. and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of said bank as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public: _____

Printed Name: _____Joseph Whitkofski_____

My Commission Expires: _6/27/17_

County of Residence: _Cuyahoga_

EXHIBIT A


All that certain property situated in the Borough of Old
Forge, in the County of Lackawanna, Commonwealth of
Pennsylvania , and being described as follows: 16520-010-060.
 Being more fully described in a deed dated 03/16/98 and
recorded 03/16/98, among the land records of the County and
State set forth above, in Deed Volume 1617  and Page 546.

Permanent Parcel Number: █████████
MARK J. KOSEK AND CAROL L. KOSEK

18 CASEY STREET, OLD FORGE PA 18518